UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

LARRY STRYKER,

               Plaintiff,

-  against –

ALEX STELMAK, an individual;
STAN MASHOV, an individual;
SIMONE V. PALAZZOLO, ESQ., an individual;
ADVANCED TECHNOLOGIES GROUP, LTD., a
Nevada corporation with New York as their
County of Principal Office;
TRADITION (NORTH AMERICA), INC., a
Delaware Corporation with New York as their
County of Principal Office;
FXDIRECTDEALER, LLC; a Delaware Limited
Liability Corporation with New York as their
County of Principal Office,

               Defendants.

Case No.: **06 CV 1322**

**JUDGE CHIN**

**<u>COMPLAINT</u>**

JURY CLAIM AS TO ALL
COUNTS

      The plaintiff, Larry Stryker, by his counsel, Karim H. Kamal, ESQ., upon

information and belief, complain of the defendants, ALEX STELMAK, STAN

MASHOV, SIMONE V. PALAZZOLO, ESQ., ADVANCED TECHNOLOGIES

GROUP, LTD., TRADITION (NORTH AMERICA), INC. and FXDIRECTDEALER,

LLC, as set forth below:

<u>**JURISDICTION & VENUE**</u>

      The claims asserted herein arise under and pursuant to Sections 11, 12, 15 and 17

of the Securities Act of 1933 (the "Securities Act") 15 U.S.C., and Sections 10, 13 and 20

of the Securities Exchange Act of 1934 ("Exchange Act") 15 U.S.C., Rule 10b-5 and

Rule 504 of Regulation D promulgated there under by the Securities and Exchange

Commission and the common law.

This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1337, Section 22 of the Securities Act 15 U.S.C. and Section 27 of the Exchange Act, 15 U.S.C.

Jurisdiction is additionally based on diversity of citizenship, 28 U.S.C. ' 1332, in that the plaintiff, Larry Stryker, was and is a citizen of New York, and the defendant Alex Stelmak was and is a citizen of New Jersey, defendant Advanced Technologies Group, Ltd. was and is a Nevada Corporation, defendant Tradition (North America), Inc. was and is a Delaware corporation, defendant FXDirectDealer was and is a Delaware corporation, and the amount in controversy exceeds the sum of $75,000, exclusive of interests and costs.

Venue is proper in this district because many of the material acts and injuries alleged herein occurred within the Southern District of New York.  Such acts include practices and conduct in violation of the Securities Act, including the preparation and dissemination in this judicial district of Form 8-K filed with the Securities and Exchange Commission on January 22, 2001, Form 10-KSB filed with the Securities and Exchange Commission on May 10, 2001, and all subsequent and incorporating annual and quarterly reports, filings and forms of defendant Advanced Technologies Group, Ltd., which documents were materially false and misleading.  In addition, defendants Alex Stelmak, Stan Mashov, Simone V. Palazzolo, Esq., Advanced Technologies Group, Ltd., Tradition (North America), Inc. and FXDirectDealer, LLC, conduct substantial business in this district.

Venue is proper pursuant to 28 U.S.C. ' 1391, in that the plaintiff Larry Stryker resides within this district.  Venue is proper in this District pursuant to section 27 of the

Exchange Act and 28 U.S.C. § 1391(b), as many of the acts and practices complained of herein occurred in substantial part in this district.

In connection with the acts, conduct, and other wrongs complained of herein, the defendants, directly and indirectly, used the means and instrumentalities of interstate commerce, including the mails, telephone communications and the facilities of interstate commerce.

## **PARTIES**

1.      The plaintiff, LARRY STRYKER, at all relevant times was, and is, a founder, officer, director, shareholder and beneficial owner of defendant ATG, residing at 246 East 71st Street, New York, NY 10021.

2.      The defendant, ALEX STELMAK ("STELMAK"), at all relevant times was, and is, Chairman and CEO of defendant Advanced Technologies Group, Ltd., with primary residence at 249 Washington Street, Jersey City, NJ 07302.

3.      The defendant, STAN MASHOV ("MASHOV"), at all relevant times was, and is, Executive Vice President, Director and Chief Technology Officer of defendant ATG and Director of Technology for defendant FXDirectDealer, LLC, with primary residence at 401-403 West 59th Street, Apt. 2D, New York, NY 10019.

4.      The defendant, SIMONE V. PALAZZOLO, ESQ. ("PALAZZOLO"), at all relevant times was, and is, corporate counsel for defendant Advanced Technologies Group, with principal office located at 7 Penn Plaza, Suite 422, New York, NY 10001.

5.      The defendant, ADVANCED TECHNOLOGIES GROUP, LTD. ("ATG"), at all relevant times was, and is, a Nevada corporation, with their principal place of business located at 32 Broadway, 3rd Floor, New York, NY 10004.

6.     The defendant, TRADITION (NORTH AMERICA), INC. ("TRADITION"), at all relevant times was, and is, a Delaware corporation, with their principal place of business located at 75 Park Place, New York, NY 10007.

7.     The defendant, FXDIRECTDEALER, LLC ("FXDD"), at all relevant times was, and is, a Delaware Limited Liability corporation, with their principal place of business located at 75 Park Place, New York, NY 10007.

<u>SUBSTANTIVE FACTS:</u>
<u>THE FRAUDULENT SCHEME</u>

8.     On or about 1996, plaintiff and defendant Stelmak worked together as officers and directors of Oxford Holdings NY, Ltd., with addresses of 40 Exchange Place, 15th Floor, New York, NY.  Plaintiff eventually brought in defendant Mashov to work for the company, Oxford Holding NY, Ltd.  Defendant Palazzolo served as corporate counsel for the company Oxford Holding NY, Ltd.

9.     On or about September, 1997, plaintiff, Stelmak, Mashov and Alex Rubenstein formed a new corporation, Oxford Global Network, Ltd., which shared the same offices as Oxford Holding NY, Ltd. at 40 Exchange Place, 15th Floor, New York, NY.  Defendant Palazzolo also served as counsel for the company Oxford Global Network, Ltd., with intimate knowledge concerning its formation, business plans and all related financial statements and filings.

10.     Accordingly, and in pursuit of their business, on or about September 1997, plaintiff and defendants Stelmak, Mashov and Palazzolo caused to be filed an Issuer Statement with the State of New York, New York Department of Law, Bureau of Investor Protection and Securities, 120 Broadway, New York, NY 10271, pursuant to Section 359-e of NY General Business Law, and its related Private Placement

Memorandum pursuant to Rule 504 of Regulation D of the Securities Act of 1933

("Issuer Statement and Memo").  Under the terms of these filings and Private Placement

Memorandum, plaintiff received 25% as an officer and director of Oxford Global

Network, Ltd., or approximately 875,000 shares, defendant Mashov received 25% as an

officer and director, or approximately 875,000 shares, and defendant Stelmak received

43% as an officer and director, or approximately 1,505,000 shares.  Soon thereafter it was

decided to close Oxford Holding NY, Ltd.

11.     On or about 1998, plaintiff was informed by defendants Stelmak and

Mashov that Oxford Global Network, Ltd. did not receive proper funding and would be

de-activated as an ongoing concern.  Defendants Stelmak and Mashov further informed

plaintiff that stock certificates had never been issued to or for any party or individual, and

that Oxford Global Network, Ltd. had ceased to exist.

12.     Notwithstanding the false representations by defendants, plaintiff

subsequently learned that Oxford Global Network, Ltd had changed its name to FX3000,

Inc.  In January 2001, defendant ATG (formerly SeventhCai, Inc., a Nevada corporation)

purchased FX3000, Inc.  Under terms of the January 2001 agreement, stockholders of

FX3000, Inc. (formerly Oxford Global Network, Ltd.) received 95% of the issued and

outstanding common stock of defendant ATG.

13.     Pursuant to defendant ATG's fraudulent Form 8-K, filed with the

Securities and Exchange Commission on January 22, 2001 ("Form 8-K"), defendant Alex

Stelmak, defendant Stan Mashov, Abelis Raskas, Alexander Furmanov and Vladislov

Stelmak were listed as "the beneficial owners of more than a majority of the shares of

common stock" of defendant ATG.  Pursuant to Form 8-K, "documentation relating to

the Company Shareholders currently remains with [defendant] Simone V. Palazzolo,

Esq., Counsel for the Company," and, "Mr. Palazzolo is hereby appointed and duly

constituted as Escrow Agent on behalf of all Company shareholders for the purpose of

effecting the receipt and distribution of the CAI [defendant ATG's former name,

SeventhCai, Inc.] shares and to execute on behalf of the Company Shareholders any and

all documents reasonably required by CAI in order to effect the acquisition of 100% of

the Company's common stock."

14.     Pursuant to Form 8-K, defendant Stelmak owned 1,361,111 shares of

common stock of defendant ATG, or approximately 25%, and defendant Mashov owned

777,778 shares of common stock of defendant ATG, or approximately 10%.  Abelis

Raskas owned 1,361,111 shares, or approximately 25%, Alexander Furmanov and

Vladislov Stelmak each owned 350,000 shares, or approximately 5% each.  Pursuant to

Form 8-K, plaintiff Larry Stryker was not listed as a beneficial owner of defendant ATG,

nor was the status of his ownership, his role as officer and director, or any such

information related to the status or transfer of his ownership of 875,000 shares of Oxford

Global Network, Ltd., contained within Form 8-K.

15.     Pursuant to defendant ATG's fraudulent Form 10-KSB, Annual Report

Under Section 13 or 15(d) of the Securities Exchange Act of 1934, filed with the

Securities and Exchange Commission on May 10, 2001 ("Form 10-KSB"), and which

incorporates defendant ATG's Form 8-K filed on January 22, 2001, defendant Stelmak is

listed as owning 17.5% of the 7,782,102 issued and outstanding shares of defendant

ATG, defendant Mashov is listed as a 10% owner, Abel Raskas as a 17.5% owner,

Robert Peacock as a 7.7% owner and Officers & Directors as a Group (4 persons) listed

as a 45% owner.  Again, there is no mention of plaintiff Larry Stryker and/or his ownership of defendant ATG's common stock.

**A.**     ***The Joint Venture***

16.     On March 20, 2002, defendant ATG entered into a joint venture agreement with defendant Tradition, forming a combined entity, defendant FXDD, now presently a subsidiary of Tradition.  Defendant ATG received a 25% interest in defendant FXDD.  The remaining 75% of the joint venture is owned by defendant Tradition. Defendant Tradition is a leading Swiss-based inter-dealer broker of money market instruments, formed in 1977, and a wholly-owned company of Compagnie Financiere Tradition, Switzerland, the world's third largest brokerage firm with offices in 17 countries and over 7,000 institutional clients.

17.     On or about November 2002, plaintiff informed defendant Tradition of his interest in defendant ATG as a founder, officer, director shareholder and beneficial owner of ATG.  Defendant Tradition ignored plaintiff, made no reasonable attempts to independently verify ATG's Form 8-K or 10-KSB, or any of ATG's related filings with the Commission, and otherwise passed or failed to act on its duty to perform standard, independent due diligence and proceeded to blindly continue with their joint venture with ATG, essentially endorsing the fraudulent scheme of defendants Stelmak, Mashov and Palazzolo by creating defendant FXDD.

18.     Prior to November 6, 2002, plaintiff's inquiries with defendants Stelmak, Mashov and Palazzolo concerning the status of his shares and ownership interest in defendant ATG were also ignored.  Subsequently, on or about November 6, 2002, plaintiff was advised in writing by defendant Palazzolo, purportedly the escrow agent on

behalf of all defendant ATG shareholders, that plaintiff was considered neither a founder nor shareholder of Oxford Global Network, Ltd., and that plaintiff was not entitled to any interest whatsoever in Oxford Global Network, Ltd., defendant ATG or any of their joint ventures, affiliates and/or subsidiaries.  In defendant Palazzolo's November 6, 2002, letter to plaintiff, he stated that, "it was agreed that you would be permitted to subscribe for a number of Shares [sic] of Oxford [defendant ATG's former name] and would pay for such Shares [sic] partly in cash ($250,000) and partly by providing computer programming services for the Company.  However, although these treasury shares had been reserved for you, you failed to honor your commitment by never paying the subscription price for the shares and by not providing the services that had been promised," and, "Consequently, your claim of 25% ownership of Oxford has no merit whatsoever and Oxford rejects it in its entirety."

To be clear, no such "agreements" or "commitments" have ever existed.  Plaintiff received and was, and is, entitled to his shares and interest in ATG as its founder, officer, director, shareholder and beneficial owner.

**B.**   ***Malicious Prosecution***

19.     On or about December 2003, defendant Stelmak filed a Summons and Complaint against plaintiff in the Supreme Court of the State of New York, County of New York, Index # 03/121805, alleging causes of action for defamation and intentional infliction of emotional distress.  In response to "Defendant's Request for Documents", specifically item #7: "According to Simone V. Palazzolo [sic] letter of November 6, 2002, Larry Stryker expressed interest to be [sic] a shareholder. Please provide me with any agreement between Oxford Global Network, Ltd and Larry Stryker which would

prove that Larry Stryker was "permitted to subscribe for a number of shares of Oxford and pay for such Shares [sic] in cash ($250,000) and partly by providing computer programming services for the Company." In response defendant stated, under penalty of perjury, "To the extent relevant documents are requested, Plaintiff states that *no such document exists.*" [emphasis added] Additionally, the contents of Stelmak's complaint indicated that defendant Tradition had been informed, either directly or indirectly, that plaintiff Larry Stryker had been making claims of being a founder, director, officer, shareholder and beneficial owner of ATG.

20.    During the course of the above referenced litigation, and in furtherance of defendants scheme to defraud plaintiff Larry Stryker, defendant Stelmak committed acts of perjury on numerous occasions. Accordingly, Hon. Debra A. James, in a strongly worded decision dated May 19, 2005, dismissed defendant Stelmak's complaint pursuant to CPLR 3126, stating, "For reasons that follow, the court in its discretion finds that this is the unusual case where a party's conduct has been *so dilatory and inconsiderate to the opposing party* [emphasis added] as to warrant the sanction of dismissal."

21.    On or about June 2004 defendant ATG fraudulently filed Form 211 with the National Association of Securities Dealers, Inc. ("NASD") for the purpose of listing its Common Stock for trading in the public market, subject to SEC Rule 15c2-11. The fraudulent application was accepted by the NASD.

22.    On January 13, 2006 defendant ATG announced the approval from the NASD for the commencement of trading of its common stock on the OTC Bulletin Board under the trading symbols "AVGG.OB."

**C.**     *Additional Scienter Allegations*

23.     Defendants acted with scienter in that they knew that the public

documents and statements issued or disseminated in the name of ATG were materially

false and misleading; knew that such statements or documents would be issued or

disseminated to the investing public; and knowingly and substantially participated or

acquiesced in the issuance or dissemination of such statements or documents as primary

violations of the Federal securities laws.  Defendants, by virtue of their acts and/or

omissions, participated in the fraudulent scheme alleged herein, causing further and

significant loss to plaintiff.

24.     Defendants were motivated to perpetrate this scheme in order to defraud

plaintiff of his interest in ATG, its businesses, joint ventures, subsidiaries and/or

affiliates.

**D.**     *No Safe Harbor*

25.     The statutory safe harbor provided for forward-looking statements under

certain circumstances does not apply to any of the allegedly false statements pleaded in

this Complaint, because the specific statements pleaded herein were neither identified as

"forward-looking statements" when made, nor accompanied by meaningful cautionary

language identifying important factors that could cause actual results to differ materially

from those in the specific statements.  To the extent that the statutory safe harbor applies

to any of the statements pleaded herein, defendants are liable for those false forward-

looking statements because at the time each of those forward-looking statements were

made, the speaker knew that the particular forward-looking statement was false, and/or

the forward-looking statement was made by or with the approval of an executive officer of ATG who knew that the statement was false or misleading.

**COUNT I**
**Malicious Prosecution**
**(Against Defendant Alex Stelmak)**

26.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 25 as if fully set forth herein.

27.     As a pretext for further defrauding plaintiff of his interest in Oxford Global Network, Ltd., defendant ATG, its businesses, joint ventures, subsidiaries and affiliates, it was alleged by defendant Stelmak that plaintiff had defamed Stelmak, intentionally causing defendant Stelmak emotional distress.

28.     Defendant Stelmak used these allegations as a means by which he and defendants could defame the reputation of plaintiff to his family, friends, and business associates, among others, in order to further his scheme to defraud plaintiff of his interest in defendant ATG, its businesses, joint ventures, subsidiaries and/or affiliates, including defendants Tradition and FXDD.

29.     On or about December 2003, a civil action was commenced in the Supreme Court of the State of New York, County of New York, captioned Alex Stelmak v Larry Stryker, Index No. 03/121805.  On February 17, 2004, a preliminary injunction was granted against plaintiff requiring him to cease and desist from any and all behavior as alleged in defendant Stelmak's complaint.

30.     After an extended period of discovery and other pretrial proceedings, defendant Stelmak refused to cooperate with court ordered discovery, refused to answer questions presented to him at his examination before trail, committed numerous acts of

perjury, and otherwise failed to live up to his discovery obligations. In Hon. Debra A. James opinion dismissing defendant's complaint, the court stated, "In sum, plaintiff's conduct has deprived the court of the opportunity to consider whether plaintiff's objections to defendant's discovery requests are justifiable as plaintiff has virtually defaulted by not arguing that he has complied with his discovery obligations. Under these circumstances, the court is compelled to consider that further discovery orders would not cause the plaintiff to comply with his discovery obligations. Plaintiff's failure to file a note of issue in this case is merely indicative of these failures. These failures are especially pronounced in a case such as this where the *defendant is unrepresented* [emphasis added], yet the defendant has complied with all the obligations imposed by the CPLR discovery statutes and the Orders of this court. Therefore, the court finds in its discretion that dismissal of the complaint is an appropriate sanction for plaintiff's conduct."

31.    Accordingly, the civil action terminated with a result favorable to plaintiff in that the preliminary injunction granted by the court on February 17, 2004 against plaintiff herein was vacated, and the complaint against plaintiff Larry Stryker was dismissed in its entirety on May 19, 2005.

32.    The civil action and the injunction were initiated and/or continued despite that lack of probable cause for the actions, in that a reasonably prudent person in the same or similar circumstances would have known that there was insufficient evidence to support defendant Stelmak's claim and compelling evidence which was contrary to that claim.

33.     The actions of defendant Stelmak were malicious, in that they were initiated and/or continued based on improper motives, ill will or wanton, reckless or grossly negligent disregard for plaintiff's rights.

34.     As a direct and proximate result of the Defendant's conduct, Plaintiff sustained serious damages, including but not limited to: past and future financial loss; past and future wage loss; damage to his reputation; past and future damage to his businesses; emotional distress, humiliation, embarrassment, mental anguish, inconvenience, legal fees and costs associated with the legal expense.

35.     Based on the foregoing, defendant Stelmak is liable to plaintiff for compensatory and punitive damages.

### COUNT II
### Abuse of Process
### (Against Defendant Alex Stelmak)

36.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 35 as if fully set forth herein.

37.     Defendant Stelmak initiated a civil action against plaintiff alleging defamation and intentional infliction of emotional distress.  The civil action included a preliminary injunction.

38.     Defendant Stelmak caused the lawsuit to be brought for improper, ulterior purposes, which included the harassment of plaintiff, such that he would abandon the pursuit of his interest in defendant ATG, its businesses, joint ventures, subsidiaries and/or affiliates, including defendants Tradition and FXDD.

39.    After the litigation was commenced, defendant Stelmak informed plaintiff's friends and business associates, including all co-defendants herein, among others, about the lawsuit in order to carry out defendant's improper, ulterior motives.

40.    As a direct and proximate result of the conduct of defendant Stelmak, plaintiff sustained serious damages, including but not limited to: past and future financial loss; past and future wage loss; damage to his reputation; past and future damage to his businesses; emotional distress, humiliation, embarrassment, mental anguish, inconvenience, legal fees and costs associated with the legal expense.

41.    Based on the foregoing, defendant Stelmak is liable to plaintiff for compensatory and punitive damages.

### COUNT III
### Violation of Section 10(b) Of
### The Exchange Act And Rule 10b-5
### (Defendants ATG, Stelmak, Mashov & Palazzolo)

42.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 41 as if fully set forth herein.

43.    Defendants ATG, Stelmak, Mashov and Palazzolo, and each of them, with scienter, by engaging in the conduct described above, directly or indirectly, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, or of the mails:

    a.   employed devices, schemes or artifices to defraud;

    b.   made untrue statements of material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    c.   engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

The purpose and effect of this scheme was to defraud plaintiff Larry Stryker of his ownership interest of common stock in defendant ATG and each of its related companies, joint ventures and/or subsidiaries, including but not limited to defendants FXDD and Tradition.

44.     By engaging in the conduct described above, each of the defendants violated, and unless restrained and enjoined will continue to violate, Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and rule 10b-5 thereunder, 17 C.F.R. § 240.10b-5.

**COUNT IV**
**Failure to File Accurate Reports**
**On Forms (10-KSB, 8-K, 211) With The Commission**
**Violations, or Aiding and Abetting Violations of**
**Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13 and 15c2-11**
**(Defendants ATG, Stelmak, Mashov & Palazzolo)**

45.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 44 as if fully set forth herein.

46.     Defendants ATG, Stelmak, Mashov and Palazzolo, and each of them, by engaging in the conduct described above, filed reports with the commission on Form 10-KSB, Form 8-K and all subsequent and prior forms, including but not limited to Form 211, filed with the NASD for the purpose of listing its Common Stock for trading in the public market, subject to SEC Rule 15c2-11, that failed to contain material information in the Forms, in light of the circumstances under which they were made, not misleading.

47.     Defendants Stelmak, Mashov and Palazzolo knowingly provided substantial assistance to defendant ATG in violation of Section 13(a) of the Exchange Act, 15 U.S.C. § 78m(a), and Rules 12b-20 and 13a-13 and 15c2-11 thereunder, 17 C.F.R. §§ 240.12b-20 and 240.12b-20 and 240.13a-13.

48.     By reason of the foregoing, defendants ATG violated, and defendants Stelmak, Mashov and Palazzolo aided and abetted such violations, and unless restrained and enjoined, defendants ATG will continue to violate, and Stelmak, Mashov and Palazzolo will continue to aid and abet violations of, Section 13(a) of the Exchange Act and Rules 12b-20 and 13a-13 thereunder.

**COUNT V**
**Violation of Section 13(b)(2)(A) Of**
**The Exchange Act**
**(Defendants ATG, Stelmak, Mashov & Palazzolo)**

49.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 48 as if fully set forth herein.

50.     Section (b)(2)(A) of the Exchange Act [15 U.S.C. § 78m(b)(2)(A)] requires issuers to make and keep books, records and accounts which, in reasonable detail, accurately and fairly reflect transactions and disposition of assets.

51.     Defendants ATG, Stelmak, Mashov and Palazzolo, and each of them, by engaging in the conduct described above, specifically in the filing of Form 8-K and Form 10-KSB with the Commission and all subsequent filings incorporating these fraudulent forms, did not accurately and fairly reflect ATG's transactions and disposition of assets.

52.     By reason of the foregoing, defendants ATG, Stelmak, Mashov and Palazzolo violated Section 13(b)(2)(A).

**COUNT VI**
**Violation of Section 13b2-2 Of**
**The Exchange Act**
**(Defendants ATG, Stelmak, Mashov & Palazzolo)**

53.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 52 as if fully set forth herein.

54.     Exchange Act Rule 13b2-2 [17 C.F.R. § 240.13b2-2] provides that no director or officer of an issuer shall, directly or indirectly, (a) make or cause to be made a materially false or misleading statement, or (b) omit to state, or cause another person to omit to state, any material fact necessary in order to make statements made, in light of the circumstances under which such statements were made, not misleading to an accountant in connection with any audit or the preparation of filing of any document or report required to be filed with the Commission.

55.     Defendants ATG, Stelmak, Mashov and Palazzolo, and each of them, made and caused others to make materially false and misleading statements and omissions to ATG's accountants and auditors in connection with Form 8-K and FORM 10-KSB..

56.     By reason of the foregoing, defendants ATG, Stelmak, Mashov and Palazzolo violated Section 13b2-2.

**COUNT VII**
**Violation of Section 17(a) Of**
**The Securities Act**
**(Defendants ATG, Stelmak, Mashov & Palazzolo)**

57.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 56 as if fully set forth herein.

58.     Defendants, directly or indirectly, acting intentionally, knowingly or recklessly, in the offer or sale of securities by use of the means or instruments of transportation or communication in interstate commerce or by use of the mail: (a) have employed, are employing, and are about to employ devices, schemes or artifices to continue to defraud plaintiff Larry Stryker; (b) have obtained, are obtaining, and are about to obtain money or property by means of untrue statements of material fact

necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) have engaged, are engaging, and are about to engage in transactions, practices or courses of business which operate as a fraud or deceit upon plaintiff Larry Stryker.

59.     As a result, defendants have violated, are violating and, unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### COUNT VIII
### Violation of Section 20(a) Of
### The Exchange Act
### (Against Individual Defendants Stelmak, Mashov and Palazzolo)

60.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 59 as if fully set forth herein.

61.     Individual defendants Stelmak, Mashov and Palazzolo acted as controlling persons of defendant ATG within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of ATG's operations and/or intimate knowledge of the false financial statements and Forms filed by ATG with the SEC, the individual defendants Stelmak, Mashov and Palazzolo had the power to influence and control and did influence and control, directly or indirectly, the decision-making of defendant ATG, including the content and dissemination of the various statements which plaintiff contends are false and misleading.  The individual defendants Stelmak, Mashov and Palazzolo were provided with or had unlimited access to copies of the ATG's reports, public filings and other statements alleged by plaintiff to be fraudulent prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

62.     In particular, each of these defendants had direct and supervisory involvement in the day-to-day operations of ATG and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violation as alleged herein, and exercised the same.

63.     As set forth above, ATG and the individual defendants Stelmak, Mashov and Palazzolo each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the individual defendants Stelmak, Mashov and Palazzolo are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of the defendants' wrongful conduct, plaintiff was defrauded of his ownership interest in defendants ATG, FDXX, Tradition, their businesses, joint ventures, subsidiaries and/or affiliates.

### COUNT IX
### Common Law Fraud
### (All Defendants)

64.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 63 as if fully set forth herein.

65.     The defendants as officers, owners, directors and escrow agents owed plaintiff a duty of full disclosure, honesty, candor, independent due diligence and a duty to exercise reasonable care regarding the acts and conduct alleged herein.

66.     Defendants, in furtherance of the unlawful course of conduct alleged herein, and with intent to deceive plaintiff Larry Stryker, employed a scheme and artifice to defraud, as a part of which defendants made and/or participated in the making of the misrepresentations and omissions of fact regarding plaintiff Larry Stryker's ownership

interest in the defendant corporations, their businesses, joint ventures, subsidiaries and/or affiliates.

67.     The aforementioned material misrepresentations and omissions of material facts were made by the defendants intentionally, with knowledge that they were false, or in reckless disregard of their falsity, to artificially defraud plaintiff of his interest in defendant corporations, their businesses, joint ventures, subsidiaries and/or affiliates.

68.     As a direct and proximate result of such unlawful conduct, plaintiff has suffered money damages.

## COUNT X
### Negligent Misrepresentation or Intentional Deceit Under The Common Law of the State of New York (All Defendants)

69.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 68 as if fully set forth herein.

70.     Defendants owed a duty to plaintiff to state all facts within its possession in connection with their roles as officers, owners, directors and escrow agents. By reason of the allegations herein, the statements in ATG's public SEC filings and elsewhere were materially false and intentionally misleading.

71.     Defendants were negligent in making such statements.  Defendants intentionally deceived plaintiff, causing plaintiff to suffer damages thereby.

72. As a direct and proximate result of such unlawful conduct, plaintiff has suffered money damages, and defendants, and each of them, will be unjustly enriched.

<u>**COUNT XI**</u>
**<u>Breach of Fiduciary Duty</u>**
**<u>(Defendant Stelmak & Mashov)</u>**

73.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 72 as if fully set forth herein.

74.     Plaintiff Larry Stryker and defendants Stelmak and Mashov, and each of them, are founders, directors, officers, shareholders and beneficial owners of ATG.

75.     The creation of ATG by plaintiff, Stelmak and Mashov gave rise to fiduciary duties that Stelmak and Mashov owed, and still owe, to plaintiff.  Stelmak and Mashov's obligations include a duty of good faith, trust and confidence owed to plaintiff Larry Stryker.

76.     Under New York law, which governs this tort claim, Stelmak and Mashov have breached their fiduciary duty, and continue to breach their fiduciary duty by, inter alia:

·     continuing to engage in the business of ATG, their joint ventures, subsidiaries and/or affiliates to the exclusion of plaintiff Larry Stryker;

·     denying plaintiff Larry Stryker critical business information to which he was entitled as a founder, director, officer, shareholder and beneficial owner of ATG;

·     freezing plaintiff out of the business and operations of ATG, its joint ventures, subsidiaries and/or affiliates;

·     denying him his bargained for equity interest in the initial share capital of ATG.

77.     Plaintiff Larry Stryker has been damaged by Stelmak and Mashov's breaches of their fiduciary duties and is entitled to actual damages in an amount to be determined at trial but believed to be in excess of $5,000,000, based on present valuation of the business.

78.     Stelmak and Mashov's breaches of their fiduciary duties were knowing, wanton and willful and executed purposefully knowing they would inflict financial, business and personal harm to plaintiff Larry Stryker, and he is entitled to punitive damages as a result of their actions.

## COUNT XII
### For Aiding and Abetting Breach of Fiduciary Duty
### (Defendants Palazzolo, ATG, Tradition & FXDD)

79.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 78 as if fully set forth herein.

80.     Despite their knowledge that plaintiff Larry Stryker, Stelmak and Mashov were founders, shareholders and beneficial owners of ATG, defendant Palazzolo, Tradition and FXDD aided, abetted, induced, and substantially assisted Stelmak and Mashov's above referenced breaches of fiduciary duty by, inter alia:

·       defendant Palazzolo, by serving as escrow agent and Counsel for the founders, shareholders and beneficial owners of ATG, including plaintiff Larry Stryker, and preparing and causing to file fraudulent Form 8-K and Form 10-KSB;

·       defendants ATG, FXDD and Tradition in continuing to engage in a joint venture to the exclusion of plaintiff Larry Stryker, notwithstanding plaintiff's objections made to all defendants;

· defendants Palazzolo, ATG, Tradition and FXDD, in freezing

plaintiff Larry Stryker out of the business and operations of ATG,

Tradition and FXDD, their joint ventures, subsidiaries and/or

affiliates;

· defendants Palazzolo, ATG, Tradition and FXDD in denying him

his equity interest in the initial share capital of ATG, FXDD, their

joint ventures, subsidiaries and/or affiliates.

81.     Defendants Palazzolo, ATG, Tradition and FXDD partook in this

concerted effort to perpetuate the fraud upon plaintiff Larry Stryker.

82.     Plaintiff Larry Stryker has been damaged by defendants Palazzolo, ATG,

Tradition and FXDD aiding and abetting Stelmak and Mashov's breach of fiduciary

duties and is entitled to actual damages in an amount to be determined at trial.

83.     Defendants Palazzolo, ATG, Tradition and FXDD's aiding and abetting of

Stelmak and Mashov's breaches of fiduciary duties were knowing, wanton, willful and

executed purposefully knowing they would inflict financial, business and personal harm

to plaintiff Larry Stryker, and he is entitled to punitive damages as a result of their

actions.

**COUNT XIII**
**(Breach of Contract)**
**(Defendants Stelmak, Mashov & ATG)**

84.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1

through 83 as if fully set forth herein.

85.    Plaintiff Larry Stryker and defendants Stelmak and Mashov entered into a

binding Agreement regarding the creation of defendant ATG.  Pursuant to the agreement the parties mutually contracted to perform both shared and respective duties.  As evidence of their agreement and mutual promises, plaintiff Larry Stryker, Stelmak and Mashov caused to be filed ATG's [at that time Oxford Global Network, Ltd.] Issuer Statement and Memo, on or about September 1997.

86.     Plaintiff Larry Stryker fully performed under the agreement by, among other things:

· introducing defendants Stelmak and Mashov;

· arranging for a team to manage the operations of ATG, including bringing into the company as Directors Yuri Lobachevsky and Dmitriy Fantalin;

· undertaking efforts to raise start-up financing for ATG (until defrauded by defendants);

· assisting in and creating ATG's financial and business plans;

· working hand-in-hand with defendant Palazzolo in creating defendant ATG;

· ensuring that ATG was commercially viable to potential investors, by providing his knowledge and expertise in the business.

87.     Plaintiff Larry Stryker also utilized his contacts in the industry, experience and reputation to provide ATG with the tools necessary to overcome challenges it faced in its initial stages of development, all of which have benefited ATG.

88.     Defendants Stelmak, Mashov and ATG has breached the agreement by,

*inter alia*, directly and/or through the authorized actions of their assistants, agents, employees and advisors:

> · freezing plaintiff Larry Stryker out of the business and financial planning for the launch and operations of ATG;
>
> · forging business relationships with defendants Tradition and FXDD to the fraudulent exclusion of plaintiff;
>
> · denying him his bargained for equity interest in the initial share capital of ATG.

89.     As a result of Stelmak, Mashov and ATG's foregoing breaches of the agreement, plaintiff Larry Stryker has sustained actual damages in an amount to be determined at trial.

### COUNT XIV
### (Breach of Implied Covenant and Fair Dealing)
### (Defendants Stelmak & Mashov)

90.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 89 as if fully set forth herein.

91.     The agreement entered into by the parties had an implied in law covenant of good faith and fair dealing.

92.     Defendants Stelmak and Mashov breached the implied covenant of good faith and fair dealing by, *inter alia*, continuing to solicit and accept services from plaintiff Larry Stryker in relation to the business of ATG when they knew that they would not perform as promised and would seek to freeze out plaintiff of the business of ATG, its joint ventures, subsidiaries and/or affiliates.

93.     Stelmak and Mashov's acts constituted a breach of the implied covenant

of good faith and fair dealing that proximately caused injury to plaintiff Larry Stelmak, who incurred damages as a result.  Stelmak and Mashov fully understood the damages that would result from their breaches.

94.     As a result of Stelmak and Mashov's conduct, plaintiff Larry Stryker is entitled to actual damages in an amount to be determined at trial.

### COUNT XV
### (Unjust Enrichment)
### (Defendants Stelmak & Mashov)

95.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 94 as if fully set forth herein.

96.     Plaintiff Larry Stryker performed all of his obligations under the agreement as founder, shareholder and beneficial owner of ATG.

97.     Stelmak and Mashov failed and/or refused to perform their obligations as fellow founders, shareholders and beneficial owners of ATG, and under the terms of their agreement with plaintiff Larry Stryker.

98.     Plaintiff Larry Stryker has not achieved the benefit of his bargain and defendants Stelmak and Mashov should be ordered, in the interest of equity, to return to plaintiff an amount to be determined at trial reflecting the extent to which they were unjustly enriched at plaintiff's expense.

### COUNT XVI
### (Promissory Estoppel)
### (Defendants Stelmak & Mashov)

99.     Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 98 as if fully set forth herein.

99.     Plaintiff reasonably relied on Stelmak and Mashov's promises as fellow

founders, shareholders and beneficial owners of ATG.

100.    Based on Stelmak and Mashov's promises, plaintiff Larry Stryker expended considerable effort in the development of ATG.

101.    Plaintiff Larry Stryker has suffered and continues to suffer damages as a result of defendants' conduct.

102.    By reason of the foregoing, plaintiff Larry Stryker is entitled to award of Damages against defendants Stelmak and Mashov to recover all monies and the value of all of his efforts spent in reliance of defendants' promises in the development of the business of ATG.

## COUNT XVII
### (Quantum Meruit)
### (Defendants Stelmak & Mashov)

103.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 103 as if fully set forth herein.

104.    Plaintiff Larry Stryker has provided valuable goods and services to defendants Stelmak and Mashov, which they have used.

105.    Plaintiff Larry Stryker had a reasonable expectation of being compensated for these services, of which Stelmak and Mashov were or reasonably should have been aware.

106.    Accordingly, if not otherwise liable in contract or tort, defendants Stelmak and Mashov are liable to plaintiff in quantum meruit for damages in an amount to be determined at trial.

## COUNT XVIII
## (Constructive Trust)
## (All Defendants)

107.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 106 as if fully set forth herein.

108.    Since defrauding plaintiff, (i) defendants have and continue to maintain custody, possession and control of property of the plaintiff Larry Stryker, in derogation of his rights and interests; and (ii) defendants hold such property in trust as constructive trustees for the benefit of plaintiff.

## COUNT XIX
## (Declaratory Relief)
## (All Defendants)

109.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1 through 108 as if fully set forth herein.

110.    An actual controversy relating to the legal rights and duties of the parties hereto and each of them, exists with regard to the matters set forth hereinabove, in that:

a.    Plaintiff maintains that defendants are obligated to render an accounting to plaintiff and to pay over to plaintiff sums not yet fully ascertained but in excess of $5,000,000, and hold in trust for the benefit of plaintiff all such sums and other property in trust;

b.    Defendants have contended, and Plaintiff is informed and believes continue to claim and contend, that they are not obligated to plaintiff for any sum or sums and refuse to account to plaintiff therefore;

c.    A declaration by this Court of the rights and obligations of the parties is accordingly necessary and appropriate.

**COUNT XX**
**(For An Accounting)**
**(All Defendants)**

111.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1
through 110 as if fully set forth herein.

112.    Plaintiff has demanded that defendants account for the property of plaintiff
in the custody, possession and control of defendants, for all disbursements therefrom, and
from the proceeds and profits therefrom which defendants have made and caused to be
made, but defendants have failed and refused, and continue to fail and refuse, to render
such accounting.

**COUNT XXI**
**(Injunctive Relief)**
**(All Defendants)**

113.    Plaintiff Larry Stryker repeats and realleges the allegations of paragraph 1
through 112 as if fully set forth herein.

114.    Defendants have and continue to wrongfully withhold and dilute
plaintiff's interest in ATG, their businesses, joint ventures, subsidiaries and/or affiliates,
including defendants FXDD and Tradition.  Plaintiff is entitled to an order enjoining
defendants, and each of them and all persons acting  in concert with them, from further
diluting plaintiff's interest in ATG, their businesses, joint ventures, subsidiaries and/or
affiliates, including defendants FXDD and Tradition.

115.    Plaintiff further request that defendants be ordered to restore plaintiff to
the 25% equity position in ATG as detailed in the Issuer Statement and Memo to which
plaintiff was entitled before defendant's fraudulent scheme.

116.    Plaintiff has no adequate remedy at law.

## PRAYER FOR RELIEF

Wherefore, plaintiff requests that this Court:

A.      Award damages against defendants, jointly and severally, including disgorgement of all unjust enrichment, for damages suffered as a result of defendants' fraud, breach of contract, related claims and violation of the securities laws, as well as punitive damages pursuant to the common law of the State of New York;

B.      against Alex Stelmak, Stan Mashov and Simone V. Palazzolo:

(i)      enjoining each of them from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], Sections 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b) and 78m(b)(5) and Rules 10b-5, 13b2-1 and 13b2-2 [17 C.F.R. §§ 240.10b-5, 240.13b2-1 and 240.13b2-2] thereunder;

(ii)     prohibiting each of them from serving as an officer or director or counsel of any issuer having a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 781], and issuer required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 780(d)], or any issuer which has issued any security traded on any national securities exchange or through any inter-dealer quotation medium;

(iii)    ordering each of them to disgorge their ill-gotten gains, and prejudgment interest thereon, to plaintiff;

B.      Enter a temporary restraining order, order freezing assets of defendants Stelmak, Mashov, Palazzolo, ATG, Tradition and FXDD, and, pending the outcome of this action, delisting ATG and their trading symbol, AVGG.OB, from the NASD pursuant to Section 12(d) of the Exchange Act, and other equitable relief, and, on notice, a preliminary injunction in the proposed form of order submitted with Plaintiff's *ex parte* motion for such relief;

C.      Enter a permanent injunction restraining defendants Stelmak, Mashov, Palazzolo, ATG and each of their officers, agents, servants, employees and attorneys and those persons in active concert or participation with them who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of similar purport and effect in violation of:

  i.  Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and

  ii.  Section 10(b) and 13(b)(5) of the Exchange Act [15 U.S.C. §
78j(b) and 78m(b)(5)] and Rules 10b-5, 13b2-1 and 13b2-2 [17
C.F.R. § 240.10b-5, 240.13b2-1 and 240.13b2-2] thereunder;

D.  Require defendants to disgorge their ill-gotten gains, plus pre-judgment
interest, with said monies to be distributed to plaintiff in accordance with a
plan of distribution to be ordered by the Court;

E.  Order defendants within three (3) business days of service of the
Temporary Restraining Order, or within such extension of time as
otherwise ordered by the Court, to submit in writing to the Court, under
penalty of perjury, an accounting identifying the following:

  i.  all accounts at banks, broker dealers, or other financial institution
in the name of defendants or presently help for the direct or
indirect benefit, or subject to the direct or indirect benefit, or
subject to the direct or indirect control, of any defendant, whether
in the U.S. or elsewhere;

  ii.  all assets of every type and description with value of at least one
thousand dollars ($1000) presently held for the direct or indirect
benefit, or subject to the direct or indirect control, of any
defendant, whether in the U.S. or elsewhere;

  iii.  all transfers of funds received or obtained though the conduct
alleged herein, including the location of any persons, entities or
accounts to which the transfers were made and the identity and
location of any assets derived from such funds;

  iv.  all transfers of assets of $1,000 or more by any defendant since
January 22, 2001 and the location of any persons, entities or
accounts to which such transfers were made;

E.  Immediately prohibit the defendants from destroying, mutilating, altering,
concealing or disposing of any documents relating to the defendants or to
any of their financial or other business dealings;

F.  Immediately establish a schedule of expedited discovery in this action;

G.  Retain jurisdiction over this action to implement and carry out the terms of
all orders and decrees that may be entered;

H.  Awarding plaintiff pre-judgment and post-judgment interest, as well as
plaintiff's reasonable attorneys' and expert witnesses' fees and other costs;
and,

I.  Reward such other and further relief as the Court deems just and proper.

## <u>JURY DEMAND</u>

Plaintiff demands a trial by jury in this action.

Dated: February 21, 2006
        New York, NY

                            Respectfully submitted,

                            KARIM H. KAMAL, ESQ.
                            Attorney for Plaintiffs


                            By: _____

                            Karim H. Kamal, Esq. (KK 2279)
                            630 Fifth Avenue, Suite 3163
                            New York, NY 10111
                            Ph:     (212) 586-0510
                            Fax:    (212) 262-9586